on behalf of ABC Sand & Rock Company. I'd like to reserve 2 minutes for rebuttal, please. Your Honors, this case is about arbitrary and irrational actions taken by a government agency against a sand and gravel operator in retaliation against his exercise of free speech.    Even if the Maricopa County Flood Control District turned to this Court today and said that it agrees that ABC has a valid floodplain use permit, that admission would not render moot or cure the constitutional violations that ABC has suffered at the hands of the Flood Control District since the district first began its campaign of harassment against ABC in 2011. While the government's actions may have taken place against the backdrop of a land use dispute, the constitutional challenge to those actions does not depend upon its ultimate outcome. And the 1983 action is therefore right notwithstanding the ongoing administrative appeals. But where are we in the process? January 2015, you had the Review Board issue its opinion. That's been appealed to the Superior Court? That has been appealed to the Superior Court, Your Honor. The Superior Court issued a decision? No, we are in the midst of litigating that decision. Okay. Why do we get into the middle of all of this? Because that's entirely different. The issue of whether or not there's a valid floodplain use permit is indifferent to the unconstitutional acts that the government has taken. We've alleged three major constitutional deprivations, an equal protection violation, a procedural due process violation and a First Amendment claim. None of those, the unfair treatment that the company has been forced to be subjected to over the course of these past four years is going to be changed whether or not we are ultimately given a valid floodplain use permit. You know, I reread the complaint yesterday. And, you know, it has some very explosive allegations in there. You know, if you can prove all of this, why, you may well have a nice 1983 suit. Then I read the opinion by the Arizona Court of Appeals, and it seemed far less sympathetic to the claims that your client was making, without resolving them. But just sort of rhetorically, it seemed far less sympathetic. Why would we possibly want to get into the middle of this until Arizona has resolved this thing itself? Again, Your Honor, because the ripeness rules do not require that we wait until a permit is issued. The cases that Judge Wake relied upon at the district court relied entirely on Williamson, the finality decision there. And the finality decision in that case essentially said that if the due process, 1983 claims, are wrapped up in the same land use dispute, then you can't do anything else. Let's think about what this might look like if it went through the Superior Court and then went back up to the Arizona Court of Appeals and the Court of Appeals came back and said the flood control district has been entirely responsible here. This was a good decision. The statute has been under-enforced. ABC is way out of line here. And the flood control district can proceed, and not only that, but the fines are still good. Okay. What if we came up with something like that? You might think that was just awful and outrageous, but we could only interfere with that by getting into the middle of this until that has been decided. But, Judge Biby, with all due respect, what's on the Ninth Circuit's decision right now is whether or not the case is ripe, not the merits of the decision. We believe we can prove the 1983 action, and we believe that the facts that we allege in the complaint must be taken as true. But the ripeness has got to be tied up with whether or not we're going to be running interference with matters that are going to be decided elsewhere. You won't be interfering. The matters that are decided elsewhere is whether or not there was a valid flood plain use permit. What the Ninth Circuit is being asked to do, what the district court is being asked to ascertain, is whether or not the acts that the ABC has been subjected to are unconstitutional. I just gave you a hypothetical in which the Arizona court of appeals says the flood control district did everything appropriately. And if you came down with that kind of a decision, that might well be preclude you arguing that what they did was retaliatory. Your Honor, sorry. So, Your Honor, the Arizona court of appeals is not being asked to take a look at the government's actions. They are only being asked to take a look at whether or not the company had a valid flood plain use permit from 2011 to 2015. That's a totally different question than the question before the district court, which is, are the government's actions, is ABC being treated unfairly? Are they being subjected to unconstitutional deprivation of constitutional rights? Totally different situations, and that's why. Are they now, or were they during that period? They were during that period, and they continue to be. No, my question is, you're using the verb tense differently, and that's what I'm trying to figure out. It's really important for you to, if you could, please just clearly answer Judge Bybee's question. Sure. What happens if you lose? What happens if we lose in the court of appeals? Right. Why wouldn't that undermine, why wouldn't that gut your action here? That might give rise to a regulatory takings claim. If we are denied the use of a valid permit and we have to stop operating on the land, we might then have a regulatory takings claim. Let's suppose the Arizona court of appeals says you don't have a valid permit. That's what I'm trying to get you to answer. What happens then? What happens if we do not have a valid permit? Then we need to go forth and try to figure out how to get a valid permit with the Flood Control District, or we cease operations. That is a different question. At that time, I believe the company would have to ---- But if the Arizona courts conclude that you don't have a valid permit, how have you got a claim for retaliation? Because the retaliation is not, the retaliation was for a letter that was written on February 14th, 2011. But the action that was taken against you was denying you the permit. And if the courts come down and conclude, the Arizona courts come down and conclude that they validly denied you the permit, then why do you have a retaliation claim? I respectfully disagree that that's not the action that was taken. The action that was taken was a series of harassing events that started the moment that my ---- that ABC sent that letter on February 14th, 2011. At that stage, they required us to pay $12,800 in renewal permit fees that were not required of other sand and gravel operators. They ---- And you didn't have to pay that. Is that correct? We did have to pay that. They interfered with business relations. They called some of ABC's largest customers and tried to get them to stop doing business with the company. They called the Arizona State Land Department and tried to get the lease permit, the lease from that land revoked from the property. They called one of the largest customers and had them actually stop. Six months afterwards, they stopped working at the sand and gravel plant. There are a series of inspections not following the rules that has happened since that letter was issued. So it's not just ---- Okay. So just to ---- forgive me, but just to finish the thought then. So your allegation is these actions that you think were out of line and retaliatory would still be actionable even if it's determined that your client was not entitled to the permit? Is that your position? That is my position. Thank you, Your Honor. So the critical flaw in the district court's order is the assumption that because ABC's permit was in 2012 found to have been renewed ---- What would be the retaliation in that case? What's that, sir? What would be the retaliation in that case? If your client wasn't entitled to a permit and didn't get a permit, where's the retaliation? Retaliation is in response to the letter that was written in 2011. Is that what you're asking, sir? Well, no, I'm asking the question I'm asking. What's that retaliation if the permit was properly denied? What does the retaliation consist of? If the permit was properly denied, the retaliation is still because the Flood Control District didn't like the fact that my client, ABC Sand and Rock, issued a rather scathing letter criticizing the new regulatory process and the 640 percent increase in fees. Is it the idea that rather than just denying it? So the question we're positing is if your client was not entitled to the permit, you think they still have a cause of action. Is the idea that rather than just denying it, they were forced to jump through a whole bunch of hoops? A due process problem, is that it? That's exactly right. Yes, Your Honor. They were forced to jump through hoops. They were forced to ---- they were subjected to a series of harassing inspections. They were forced to suffer due process violations to the extent that there was an ex parte hearing held on the very permitting issue between the Flood Control District and the Board of Review, while at the same time the Flood Control District preoccupied the principal of ABC Sand and Rock by holding an inspection and having him be away from the premises. They're a series, if you go through the complaints, of bad act. And they are egregious. And if we can prove them, I think it is a very good 1983 action. We just need to be able to move past the ripeness challenge. And I think the fact that even if the Flood Control District turned to us and said, yep, you're right, you've been operating absolutely above board for the past five years. You have had a permit. We have still had to suffer a series of constitutional right deprivations, and it is that deprivation that gives rise to the 1983 challenge, irrespective of the resolution of the permit issue. And if there's no further questions, I'd like to reserve the remainder of my time for rebuttal. Okay. Thank you. May it please the Court, my name is Ann Longo, and I represent the Maricopa County defendants. The central issue here is ripeness, and ABC does not shed much light on that issue. You have to have a concrete, particularized injury in fact in order to have an Article III case or controversy. ABC has not suffered any actual injury. They have never been deprived of the use of their land. They have continued to operate to this day. Without an Article III case or controversy, the district court had no subject matter jurisdiction, and therefore no discretion to exercise supplemental jurisdiction over the State claims. Let's suppose that the Arizona courts affirm the orders that are now in place. So everything's completed very quickly here, and we're left with the decision by the review board. Do the plaintiffs still have a case? Can they come back in and make a case against the district? At some point, if and when their case becomes ripe, they could bring a claim. But that point is not now. They can simply refile the suit. Correct. But there is no concrete injury at this point. And plaintiffs rely strongly on the case of Carpinteria. But that case is distinguishable. In that case, the court found that the landowner was deprived of the use of his land for 9 years. You have to have that concrete injury in order to go forward. Also in a case of the case. They claim, as I understood, if I understood correctly, harassment, inspections that shouldn't have happened, they were given a hard time in general. Why aren't those concrete harms? Well, I think that goes to their First Amendment retaliation claim. But you've got to look at the time frame of events. The fees and the changes were in place or being talked about prior to the February 14th letter that was submitted by ABC. ABC, if you look at the excerpt of record, even says they were attending meetings with the Arizona Rock and Gravel or Rock Association discussing the changes in the regulations that the Flood Control District was going to put into place. Those things were already happening before ABC sent its letter. So you don't have that causal connection between the alleged protected speech and the alleged retaliatory action. So that's an important thing to look at. These are regulations that were changed or needed to be changed based on changes from FEMA, changes in state law, various other changes. And the Flood Control District is authorized to regulate landowners within the floodplain. That is what they were doing with ABC as well as with the other property owners there that are mining or excavating or digging out rocks. It has to do with public health, safety, and welfare, and they're entitled to do that. The fact that they may have been more informal years before or required lower fees does not mean that they are estopped from changing that practice. And that was something that the Arizona Court of Appeals issued in their decision as well. They said that they rejected ABC's estoppel argument, said that a government agency like the FCD is not estopped from enforcing their regulations. So maybe they were too lax before and conditions changed, statutes and requirements, and they needed to pay more attention to it and do that. ABC has not shown the causal connection between the letter from ABC to FCD and any type of retaliatory action. And, again, it comes back to what they're doing. When would they have had a chance to show it? They would be doing that in the State court proceedings, Your Honor. We're already going through a second round of appeals in the State court proceedings. There was the first board of hearing. When would they show retaliation in the State court proceedings? I mean, they have a claim of retaliation here. They haven't really been given a chance to. They are raising all of these. to bring a motion for summary judgment or anything else because the judge said it's not ripe. So when would they have been able to do this? They have been raising these allegations in the proceedings below, Your Honor. And until they become ripe and they can show some type of actual injury, a case is not ripe. This court should benefit from the decision of the State courts. These proceedings need to be allowed to continue and go through until they finish so we can see exactly how the State courts interpret the State statutes, the administrative rules, to see how the whole thing plays out and whether or not there is any injury to ABC. Opposing counsel says that the State court proceeding is going to decide entitlement to the permit. Are they going to decide anything else? I'm not involved in the State court proceedings, Your Honor. But the validity of ABC's permit is at issue at the State court level. Right. Is that all that's at issue at the State court level? Your Honor, that is the main thing that is at issue at the State court level. But other issues. How is it then that you're in response to Judge Kosinski's question, I'm just a little confused by your response, that they are litigating the retaliation type claims there? Well, all of the same allegations that they've raised up here with the district court are being raised down below as well. Okay. So this sounds like a number of them. You're just not hearing my question. That's why I was trying to ask a clarifying question about is the issue that's going to be the legal issue that will be decided simply the entitlement to the permit as opposed to, I understand allegations are being made, but it doesn't sound to me like the discovery that Judge Kosinski is talking about is going on, that those issues are going to be resolved in the State court proceeding. Do you know that? I believe, yes, there are numerous factual issues that will be resolved in the State court proceedings. And those factual issues need to play through before it comes up to this court for review. So there are factual issues that need to be resolved. Some of the legal issues are one that has already been determined by the court of appeals, that the flood control district is not required to go back to informal enforcement procedures. But there's a difference between saying there are certain things that are going to maybe be clarified by State court proceedings and saying, as the district court did, that the claim is not ripe. There may be a ripe claim, which might be developed further by State court proceedings, but to say it's not ripe, it means, as I understand it, it means there's no claim  now. That's correct. And opposing counsel says, well, no, we have a claim now. We have a claim for retaliation now. It may get worse, depending on what happens in the State court, but we have some claim now. What's your answer to that? Under Carpinteria, they do not, unless they can show an actual and concrete particularized injury, an injury in fact, and that they cannot show. They have not been to the court. In inspections, I thought I heard a claim that there were inspections on the retaliatory motive that were not appropriate. Well, the causal connection for retaliation is not there, Your Honor. But all of the landowners are required to go through certain procedures to renew a permit or to apply for an initial permit. It's true that — it's true. But I think you'll also agree that if an agency has a right to do inspections and then they do extra inspections after somebody exercises First Amendment rights, and, you know, the inspections are burdensome and harassing and so on, and magically they appear on the property, you know, many times more often, you might have a retaliation claim, even though the agency might be entitled to do the inspection and does inspections of other properties as well, right? So burdensome inspections, extra burdensome inspections can be retaliation. Well, Your Honor, the mere fact that they have to have inspections done, if that were the case, that everyone who complained about having an inspection done on their property had a claim, then we would be having a lot of claims filed. Everyone — That's her argument. Her argument is simply that they had to jump through, you know, to unfairly summarize, but that they had to jump through a lot more hoops than other folks. That's her argument. Well, Your Honor, that's just part of the process. And that process applies to all of the landowners out there. And they may not be similarly situated to other — I think the claim is that what's being done to them is not what is being done to all landowners, that they are being singled out for more of this process, for heavier handed process, than other landowners. Why? Because they send the letter. That's the claim. You may not like it. You may disagree with it on the facts. But if you want to help your client, you're going to answer on the merits. What do you do with — if that's how we understand their claim to be, how do we resolve it in your — how can we resolve it in your client's favor? Your Honor, these regulations were in place before that letter. And it's not only ABC that needs to go through the proper application and submit additional information if requested by the Flood Control District. It's other property owners there as well. ABC has dug in its heels and simply says, we want it back the old way it was when it was informal. We want the fee to be lowered to $100 the way it was however many years ago we did it. And we just want to send in a letter and say, renew our permit and have it be done. But that is not how it is now. And if that's the way it was in the past, the Flood Control District was within its rights to revise its regulations and to provide more oversight to the process. Thank you. Your Honor, I'm sorry. My time is up. Okay. Thank you. You have about a minute and some left for rebuttal. Thank you, Your Honor. With respect to the fact of the question of whether or not ABC has alleged a concrete particularized injury, we absolutely have. The case law makes it clear. It juxtaposes what is a concrete particularized injury versus one that is abstract or hypothetical. And as Judge Kaczynski said during his questioning, what we have alleged are very much concrete particularized facts. And it doesn't just inspections. We have alleged causal connections in the complaint to show the actions that the FCD has taken since Dave Waltemath at ABC wrote that retaliatory letter in 2011 was very much in response to the retaliatory acts were taken in response to that letter. For example, there is an admission from an FCD supervisor, Mike Jones, that the FCD was out to get Dave, Mr. Waltemath, the principal of ABC. There was an ex parte hearing held during the course of the permitting process in which the Board of Supervisors referred to Mr. Waltemath as, quote, that jerk of a guy and otherwise conspired to figure out how to deprive him of a permit going forward. A series of harassing inspections, not just those that complied with the letter of the regulation, but additional ones not given with reasonable notice. Issuances of cease and desist notice and allegations that he's been operating without a permit since 2006, contrary to their own records. Interference with the large customers and land lessors that I mentioned before. And some of the arguments also suggest actual financial injury, although I would note that the deprivation of constitutional rights is itself an injury. And a plaintiff can state a claim for damages without a showing of actual injury. They may get nominal damages in that case, but they can still succeed on a claim. Thank you. Thank you, Your Honors. Cage-Target will stand submitted.
judges: Kozinski, Bybee, Christen